UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER BUSH | }<br>}<br>} |
| Plaintiff, | }<br>} |
| v. | } Case No.: 2:20-cv-00945-ACA<br>} |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | }<br>}<br>}<br>} |
| Defendant. | } |

## MEMORANDUM OPINION

Plaintiff Jennifer Bush appeals the Social Security Commissioner's (the "Commissioner") denial of her claim for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1). Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I. PROCEDURAL HISTORY

Ms. Bush filed for disability insurance benefits and supplemental security income in November 2017, with an alleged disability onset date of September 23, 2017. (R. 162–74). The Social Security Administration initially denied Ms. Bush's claim (R. 99–100) and, after a hearing, an Administrative Law Judge ("ALJ") issued

an unfavorable decision (R. 23–37). Ms. Bush then requested review of the decision and the Appeals Council denied review. (R. 1–5). The Appeals Council's denial of review makes the Commissioner's decision final and ripe for review. *See* 42 U.S.C § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable

and supported by substantial evidence." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991). The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ's decision must be affirmed where it is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Baker o/b/o Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989).

### III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ found that Ms. Bush had not engaged in substantial gainful activity since her alleged onset date of September 23, 2017. (R. 28). The ALJ found

3

that Ms. Bush had severe impairments consisting of migraine headaches, osteoarthritis of the right knee, left knee patellar instability, systemic lupus erythematosus, and fibromyalgia. (R. 29–30). However, the ALJ concluded that Ms. Bush does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Subpart 404, Appendix 1. (R. 30–31).

After considering the evidence of record, the ALJ determined that Ms. Bush had the residual functional capacity ("RFC") to perform a reduced range of sedentary work. (R. 31–35). Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Ms. Bush could perform her past relevant work as a loan application clerk and receptionist or, in the alternative, other jobs that exist in significant numbers in the national economy such as an information clerk, a food and beverage order clerk, or a callout operator. (R. 35–36). Accordingly, the ALJ found that Ms. Bush was not under a disability as defined by the Social Security Act from the alleged onset date through the date of the ALJ's decision. (R. 36–37).

## IV. DISCUSSION

Ms. Bush asks the court to reverse the Commissioner's decision because the ALJ (1) incorrectly assessed Ms. Bush's RFC and (2) improperly discredited Ms. Bush's subjective testimony. (Doc. 12 at 2–3). The court considers each argument in turn.

1. Substantial Evidence Supports the RFC Determination

Ms. Bush first argues that the ALJ did not adequately incorporate limitations due to her migraine headaches into the final RFC decision.

The "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider all relevant evidence, including medical source statements, medical and laboratory findings, and the claimant's description of her own symptoms. 20 C.F.R. § 404.1545(a)(3). "[T]he claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Here, the ALJ considered objective and diagnostic medical findings, the Botox injections Ms. Bush received from Dr. James Strong as treatment for her migraines, evidence from the treating neurologist Dr. Rodney Swillie, evidence from the state agency medical consultant, and Ms. Bush's testimony and complaints regarding symptoms related to her impairments. (R. 32–35). The ALJ then found that Ms. Bush had the RFC to perform sedentary work, but with the limitations that she could only have occasional exposure to temperature extremes, humidity, dust,

odors, fumes, pulmonary irritants, and vibration and no exposure to unprotected heights, commercial machinery, large, deep bodies of water, and commercial driving. (R. 31).

Ms. Bush argues that the ALJ gave no explanation of how her migraines could affect her ability to work or how they influenced the RFC decision. (Doc. 12 at 5). However, the ALJ considered extensive evidence related to Ms. Bush's migraines, along with Ms. Bush's testimony as to her symptoms and the Botox treatment regimen. (R. 32–35). The ALJ further included migraines as one of Ms. Bush's severe impairments and accounted for this in her RFC by limiting Ms. Bush's exposure to environmental triggers for migraines and work that could present dangers due to a slower reaction time from migraines. (R. 31, 35). Substantial evidence therefore supports the ALJ's finding that Ms. Bush could work with these restrictions despite occasionally experiencing a migraine.

Ms. Bush further argues that the RFC assessment did not include a narrative discussion of her symptoms and treatment history, and that the ALJ thus improperly evaluated the medical records regarding Botox treatments for Ms. Bush's migraines. (Doc. 12 at 5–7). The ALJ discussed Ms. Bush's symptoms and treatment history at length, however, and included an extensive discussion of the frequency of Ms. Bush's migraines from 2016 to 2019. (R. 33). The ALJ noted that the Botox injections had reduced the frequency and intensity of Ms. Bush's migraines as well

as the need for pain medication, that she only experienced an increase in headaches when she had chronic bronchitis, that her neurological examinations were normal, and that she did not have to go to the emergency room for her migraines after starting Botox treatments. (*Id.*). Substantial evidence thus supports the ALJ's determination that Ms. Bush's migraines were controlled with Botox injections.

Ms. Bush's final contention is that the ALJ erred by not including the number of days Ms. Bush would be expected to miss work due to her migraines in her RFC or in the questions posed to the VE. (Doc. 12 at 5, 7–9). However, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). An ALJ is also not required to pose a hypothetical that includes unsupported findings to a VE. *Crawford*, 363 F.3d at 1161. Further, although the ALJ did not mention Ms. Bush's migraines in her hypothetical to the VE specifically, she did inquire what the customary tolerances for absences were, which the VE explained would be one day per month. (R. 66–67). Implicit in this inquiry was the ALJ's determination based on the medical records that Ms. Bush would not miss work more than one day per month due to her migraines. Accordingly, the VE's testimony constituted substantial evidence and supported the ALJ's determination.

## 2. Substantial Evidence Supports the Evaluation of Ms. Bush's Subjective Testimony

Ms. Bush further contends that the ALJ failed to articulate reasons sufficient to reject Ms. Bush's subjective testimony.

To show a disability based on subjective pain testimony, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain, or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Once an ALJ identifies an underlying medical condition that could reasonably be expected to produce a claimant's subjective symptoms, the ALJ evaluates the claimant's statements about the intensity, persistence, and limiting effects of the symptoms in relation to the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). If the ALJ discredits the claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225. The court will not disturb an ALJ's clearly articulated credibility finding if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ determined that Ms. Bush's migraines could reasonably be expected to produce some of Ms. Bush's alleged symptoms. (R. 33). However, the ALJ also determined that Ms. Bush's statements about the intensity, persistence, and

8

limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. (R. 32–33). In particular, the ALJ noted inconsistencies in Ms. Bush's descriptions of her symptoms after she began Botox treatments, the lack of objective medical evidence to support some of her complaints, and discrepancies between the severely limited daily activities Ms. Bush describes on her Function Report and the milder limitations in her reports to her medical providers. (R. 33–34). In addition, the ALJ found that the state agency medical consultant's assessment also supports that Ms. Bush's subjective complaints were inconsistent with the record. (R. 35, 81–83).

Ms. Bush argues that the ALJ contended that Ms. Bush must be unable to work at all to be eligible for disability benefits. (Doc. 12 at 12). Ms. Bush is correct that, if this were the legal standard asserted by the ALJ, this would be in error. *See Mitchell*, 771 F.3d at 782. But the ALJ did not find that Ms. Bush needed to show a total inability to work. Rather, the ALJ concluded that Ms. Bush's own assertions that she was completely unable to work because of her debilitating symptoms was not supported by the evidence. (R. 32–33). Because this argument misconstrues the legal standard applied by the ALJ, it does not change the court's analysis.

Secondly, Ms. Bush suggests that it was improper for the ALJ to consider objective evidence in the evaluation of Ms. Bush's subjective complaints. (Doc. 12 at 12–13). While an ALJ may "not evaluate an individual's symptoms based *solely*

9

on objective medical evidence" SSR 16-3P, 2017 WL 5180304, at *4 (October 25, 2017) (emphasis added), it is still the ALJ's duty to evaluate "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." *Id.* at 2. As discussed above, the ALJ considered not only the objective medical findings in determining the credibility of Ms. Bush's subjective testimony, but also the consistency of Ms. Bush's own descriptions of her daily activities and the efficacy of the Botox treatments in alleviating her migraine symptoms. (R. 33–34). It was thus proper for the ALJ to consider the lack of supporting objective evidence when evaluating Ms. Bush's subjective testimony.

Finally, Ms. Bush argues that the ALJ improperly held that Ms. Bush's descriptions of her symptoms were inconsistent. (Doc. 12 at 13). In support of this argument, Ms. Bush contends that she has consistently complained of chronic migraines. (*Id.* at 14). However, the ALJ did not dispute that Ms. Bush suffers from migraines, as this was included as a severe limitation and incorporated into Ms. Bush's RFC. (R. 29, 35). Rather, the ALJ found that the severity and frequency of the symptoms according to Ms. Bush were inconsistent with the record, as discussed above. (R. 33–34). While Ms. Bush contends that the "subjective complaints are in no way out of proportion with her underlying medical condition" (doc. 12 at 14), this is little more than an invitation for the court to reweigh the

evidence, which it cannot do, *see Crawford*, 363 F.3d at 1158–59.  Because the ALJ's credibility finding is supported by substantial evidence, the court will not disturb it.

## V. CONCLUSION

For the reasons given above, the court concludes that the Commissioner's decision is supported by substantial evidence and the Commissioner applied proper legal standards in reaching the decision.  As such, the court **WILL AFFIRM** the Commissioner's final decision.  The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this June 30, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE